**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

VANESSA VENUS,
*On behalf of herself and all others similarly situated*,

          Plaintiff,

             **v.**

ECOCO, INC.,

          Defendant.

---

**Case No.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff VANESSA VENUS ("Plaintiff VENUS," or "Plaintiff"), individually and on behalf of all other persons similarly situated, by and through her undersigned attorneys, pursuant to this Class Action Complaint against ECOCO, INC., alleges the following:

## NATURE OF THE ACTION

1.    This is a consumer protection action arising out of the deceptive and otherwise improper business practices that ECOCO, INC. ("Defendant") engages in with respect to the labeling of its Eco Style Professional Styling Gel line of products, including but not limited to the following:

        a.  Eco Style Professional Styling Gel with Coconut Oil;

        b.  Eco Style Professional Styling Gel with Olive Oil;

    c.   Eco Style Professional Styling Gel with Argan;

    d.   Eco Style Professional Styling Gel Krystal;

    e.   Eco Style Professional Styling Gel with Black Castor & Flaxseed Oil;

    f.   Eco Style Professional Styling Gel with Olive Oil & Shea Butter, Black Castor oil & Flaxseed;

    g.   Eco Style Professional Styling Gel Curl & Wave; and

    h.   Any other Eco Style Professional Styling Gel that contains a "no flake" representation on its labeling but contains PVP (individually, a "Product"; collectively, the "Products"). *See* **Exhibit A** (displaying each Product's labeling).

2.    The Products are marketed extensively in the United States throughout numerous retail stores, salon parlors, and online.

3.    Defendant advertises each of the Products with a "no flake" representation. However, this representation is deceptive because it leads reasonable consumers to believe that the Products will not produce flakes, when in fact they do just that. Consumers are therefore misled as to the actual properties of the Products. Accordingly, Defendant's deceptive product marketing violates both New York State laws and the Federal Food Drug & Cosmetic Act ("FDCA").

4.    Plaintiff VENUS viewed Defendant's misleading Product labeling and reasonably relied in on the representation that it does not produce flakes. Plaintiff was thereby deceived into purchasing a product inferior to the one she had bargained for.

5.    Upon information and belief, Defendant continues to sell the misbranded Products.

6.    Plaintiff brings this proposed consumer class action on behalf of herself and all other consumers (the "Class") who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale.

7.      Defendant purposely manufactures, advertises, markets, distributes and sells the mislabeled Products throughout the United States and the District of Colombia.

8.      Defendant has deceived Plaintiff and the Class by misbranding its Products, inducing Plaintiff and Class members to reasonably rely on its misrepresentations and, on that basis, purchase Products they otherwise would not have purchased at the given prices.

9.       Defendant has collected millions of dollars from the sale of its Products, which it would not have accrued but for its unfair and deceptive practices, as described more fully herein. Plaintiff brings this class action to stop Defendant's unlawful business practices.

10.     Plaintiff does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

11.     Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of New York, the other 49 states, and the District of Columbia.

12.     Defendant violates statutes enacted in each of the fifty states and the District of Colombia that are designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable business practices, as well as false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*

*12)* Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

*13)* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

*14)* Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

*15)* Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

*16)* Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

*17)* Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

*18)* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

*19)* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

*20)* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

*21)* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

*22)* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)* Michigan Consumer Protection Act, § § 445.901, *et seq.;*

*24)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws §§ 39-5-10, *et seq.;*

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

13.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendant, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

14.    The Court has personal jurisdiction over Defendant because the Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoings alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, thereby rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's activity within New York State is substantial and not isolated.

15.    Defendant is an Illinois corporation duly authorized to conduct business in the State of New York. Defendant has committed a tortious act causing injury to a person within the State of New York that Defendant should have reasonably foreseen.

16.    Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein

occurred in this District. Plaintiff is a citizen of New York. She resides in this District and purchased the Product in this District. Defendant additionally advertises, distributes, and sells the Products in this District.

## PARTIES

*Plaintiff*

17.    Plaintiff VENUS is a resident of New York. On January 19, 2019, she purchased an 8 oz bottle of Defendant's  Eco Style Professional Styling Gel with Coconut Oil at a beauty shop in Brooklyn. Plaintiff VENUS purchased the Product for the premium price of $1.99 in reliance on the Product's front-label "no flake" representation. *See* **Exhibit A** at 1. Although Defendant's front-label representation unambiguously promised that the Product does not flake, Plaintiff discovered that the Product does just that, even when used in accordance with Defendant's instructions for use. Plaintiff VENUS was therefore denied the benefit of her bargain and economically injured in an amount up to the purchase price, to be determined by expert analysis at trial.  She did not receive a product with the qualities she thought she paid for, a hair gel that will not produce flakes. Should Plaintiff VENUS encounter the Product in the future, she could not rely on the truthfulness of its representations, absent corrective changes to the Product's labeling or ingredients.

*Defendant*

18.    Defendant ECOCO, INC. is organized under the laws of the State of Illinois, its agent for service of process is William Boker, located at 1830 North Lamon Avenue, Chicago, Illinois 60639.

19.    Defendant manufactures, packages, distributes, advertises, markets, and sells the misbranded Products to millions of consumers throughout the United States. The labeling, packaging, and advertising for the Products relied upon by Plaintiff and the Class were prepared

and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products, and misled reasonable consumers, including Plaintiff and the Class, into purchasing the Products. Defendant owns, markets, and distributes the Products, and creates and/or authorizes the unlawful and fraudulent labeling of the Products.

## FACTUAL ALLEGATIONS

### Defendant's Products Produce Flakes

20.    Plaintiff VENUS purchased Defendant's Product in order to avoid the flaking that commonly occurs with some other hair gels. Plaintiff specifically purchased the Product because of Defendant's "no flake" representation on the Product's front label. Consistently with the Product's directions fro use, Plaintiff applied the Product to her hair to sufficiently hold and style it. However, after the gel dried, Plaintiff noticed that the Product produced grayish flakes that lookd like dried glue. Plaintiff knows that she did not have flakes in her hair prior to applying the gel because she inspected her hair prior to applying the gel, and also because she does not suffer from flaking naturally. Moreover, natural flakes are easily distinguishable in texture, color, and shape from  the gel flakes Plaintiff observed in her hair after applying the Product. Defendant's Product therefore does not live up to its unequivocal "no flake" representation.

21.    Plaintiff VENUS's experience with the Product is not an isolated occurence. Many other consumers have had similar experiences with Eco Professional Styling Gels. **Exhibit B** provides online reviews from consumers who raise the same complaint as Plaintiff:

**<u>Two Stars</u>**

"Flakes Easily!"[1]

**<u>Two Stars</u>**

"Leaves **lots of flakes**"[2]

**<u>One Star</u>**

**I really really wanted to love this gel but the flakes don't lie**
"**Flake city**. I really really wanted to love this gel but the flakes don't lie."[3]

**<u>Five Stars</u>**

"Great for wash and go, and twist outs! **Does dry flaky** or crunchy."[4]

**<u>Four Stars</u>**

**Great hold but….**
"This gel gives my hair great hold but **I've experienced flaking w/ it**. I don't have dandruff but that's how the flakes look & I have a very short hair cut w/ a tapered back so any hair imperfections are on public display, so now I only use it right before I wash my hair."[5]

**<u>Two Stars</u>**

**Disappointing**
"**It leaves white flakes** in my hair. Disappointing."[6]

---

[1] https://www.amazon.com/ECOCO-Eco-Style-Olive-Pack/product-reviews/B01BV3KN2E/ref=cm_cr_arp_d_viewopt_sr?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=1#reviews-filter-bar.

[2] https://www.amazon.com/ECOCO-Eco-Style-Olive-Pack/product-reviews/B01BV3KN2E/ref=cm_cr_getr_d_paging_btm_next_9?ie=UTF8&filterByStar=two_star&reviewerType=all_reviews&pageNumber=1#reviews-filter-bar (emphasis added).

[3] https://www.amazon.com/Eco-Style-Coconut-Styling-Ounce/product-reviews/B01MSRHZAZ/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (emphasis added).

[4] https://www.amazon.com/Eco-Style-Coconut-Styling-Ounce/product-reviews/B01MSRHZAZ/ref=cm_cr_getr_d_paging_btm_next_2?ie=UTF8&filterByStar=five_star&reviewerType=all_reviews&pageNumber=2#reviews-filter-bar

[5] https://www.amazon.com/ECOCO-Eco-Style-Olive-Pack/product-reviews/B01BV3KN2E/ref=cm_cr_getr_d_paging_btm_next_9?ie=UTF8&filterByStar=four_star&reviewerType=all_reviews&pageNumber=9#reviews-filter-bar (emphasis added).

[6] https://www.amazon.com/Eco-Styler-Moroccan-Argan-Styling/product-reviews/B00DF6KPUG/ref=cm_cr_getr_d_paging_btm_next_7?ie=UTF8&reviewerType=all_reviews&pageNumber=7 (emphasis added).

**One Star**

**Too much unwanted flaking.**
I have straight semi wavy hair I do the use a lot of products in my hair. Yet the gel was really useful when I had a pixie cut but **it was always producing unwanted flaking**.[7]

22.    These reviews demonstrate that Plaintiff's negative experiences with using the Product are not uncommon and that her disappointment with the Product was not purely subjective. The reviews also lend plausibility to Plaintiff's allegation that Defendant's "no flake" claim is deceptive and misleading. *See FTC v. Willms*, No. C11-828 MJP, 2011 WL 4103542, at *5 (W.D. Wash. Sept. 13, 2011) ("Consumer complaints are highly probative of whether a practice is deceptive . . . .").

### Defendant's Products Contain an Ingredient Widely Known to Cause Flaking

The foregoing complaints are unsurprising given the Products' ingredients. In particular, Defendant's Product contains poly N-vinyl-2-pyrrolidone ("PVP"), a water-soluble polymer commonly used in hair gel and other cosmetic products. *See* **Exhibit C** (displaying the Products' ingredients statements). Cosmetic chemist Tonya Becker observes that PVP has a natural tendency to produce flaking:

> **PVP** (poly N-vinyl-2-pyrrolidone) is an excellent film-former that is substantive to hair, forms clear films, and is completely water soluble. However, it absorbs water readily, which in humid weather makes it sticky or tacky to the touch, can cause frizz, and give a dull appearance to the hair. ***In dry weather, it can become brittle and flaky***.[8]

Bernard Idson, a professor in the College of Pharmacy at the University of Texas, Austin, confirms the same:

---

[7] https://www.amazon.com/ECOCO-Eco-Style-Olive-Pack/product-reviews/B01BV3KN2E/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (emphasis added).
[8] McKay, Tonya, and Tonya McKay Becker. "NaturallyCurly." *NaturallyCurly.com*, 10 July 2015, www.naturallycurly.com/curlreading/kinky-hair-type-4a/the-nitty-gritty-details-about-hair-gel. (emphasis added)

Today, PVP is occasionally used as a conditioning agent in shampoos. However, PVP and its copolymers are used primarily as styling resins. As hair styles continued to progress, some of the deficiencies of PVP homopolymer began to be noticed. PVP is hygroscopic. It tends to become sticky, dull, and tacky as atmospheric moisture is adsorbed, and, of more significance, the adsorbed moisture plasticizes the film and causes ductile fracture of the bond. *A further drawback of PVP homopolymer was its tendency to become brittle and flaky in dry weather*.[9]

## Defendant's Misleading Labeling Practices Would Deceive, be Material to, and be Relied Upon by a Reasonable Consumer

23.     Defendant might argue that no reasonable consumer would expect the Products to never cause flakes notwithstanding their unambiguous and unqualified representation to this effect. Even if such an argument could in theory be credited, it is unavailable to Defendant when it uses PVP despite the availability of superior alternatives known to mitigate flaking. *Cosmetics and Toiletries*, a research and development website for cosmetic chemists, observes:

After decades of developing hair styling polymers, there is still room for improvement. Many generations of polymers have been introduced since the first synthetic styling polymer polyvinylpyrrolidone (PVP) in the 1950s. Today's styling formulations are further optimized with polymer combinations. This is especially true for styling gel and wax formulations, with combinations of styling polymers and polymeric thickeners to achieve the right balance of rheology profile, setting performance and humidity resistance without sacrificing sensory properties, e.g. peaking, gel structure and clarity. A lot of those formulations still contain PVP-based polymers, acrylic-based polymers and carbomer-based thickeners.

\* \* \*

The styling performance of Luviset One in gel formulations was compared to marketed PVP-based polymer technologies via hair styling formulations containing perfume, solubilizer and preservative…. The comparison was done with a 4% active total

---

[9] Bernard Idson, "Polymers in Conditioning Agents for Hair and Skin," in *Conditioning Agents for Hair and Skin*, eds. Randy Schueller and Perry Romanowski (Marcel Dekker, Inc, 1999), p. 259 (emphasis added).

polymer level (styling polymer and thickener). In the case of Luviset One, an additional thickener is not required to achieve a target viscosity range of 40-50 Pas.

The maximum bending force of the hair/polymer composite is higher in formulations with the Luviset One than those of conventional vinylpyrrolidone based polymers (see Figure 4). Furthermore, formulations with Luviset One delivered **significantly lower flaking results compared to formulations with PVP** K 90 or VP/methacrylamide/vinylimidazole copolymer and comparable results to VP/VA copolymer.

Luviset One can be combined with nonionic, cationic and other anionic styling polymers to increase the setting performance without sacrificing gel sensory properties, rheology, and clarity. Figure 5 captures the performance results of the different polymer combinations (4.5-5.0% active polymer) versus Luviset One (4.0% active polymer) and market benchmarks. Combining Luviset One with other polymers provided not only better stiffness properties, **but lower flaking results as well**.[10]

24.     A reasonable consumer would expect a product representing that it does not cause flaking to be using the latest, most advanced available ingredients conducive to this end, as opposed to the 1950s-era PVP ingredient known to cause flaking.

25.     The scientific consensus about PVP is well known to hair stylists, as shown in this post on *New Creations Salon*:

If there is one fear of using hair gels that many naturals have it's the dreaded "f" word - flaking. This is the number one concern followed closely by the gels making the hair hard. This really comes down to the formulation of the product…

**Common gelling ingredients**

So what polymers are typically going to be in a gel formula? This list is not complete but contains some of the more common ingredients you'll find in hair care products.

---

[10] https://www.cosmeticsandtoiletries.com/formulating/category/haircare/Multifunctional-Performance-from-a-New-Generation-Polymer-274506271.html (emphases added).

- **PVP** (POLY N-VINYL-2-PYRROLIDONE) - **This polymer is notorious for causing flaking.** It's great at film-forming and can be washed away with water which is great for the no-poo or low-poo naturals. It's also inexpensive. However some notable drawbacks are a crunchy feel to the hair, flaking in cold, dry weather, and, in humid conditions tackiness, stickiness and frizz.

- PVA (POLY VINYL ACETATE) - PVA is another ingredient commonly found in hair gels and it overcomes some of the drawbacks of PVP. It is water resistant and therefore doesn't absorb as much moisture from the atmosphere. The hold is more flexible which means **less flaking**. A drawback of PVA is that it doesn't provide that much hold to the hair.

- COPOLYMERS - Copolymers include ingredients such as PVP/VA copolymer and the acrylates copolymer and they have been designed to bring more balance to a formula creating a polymer that is strong yet flexible and **less likely to flake**. It can also be used in more temperature extremes while still maintaining optimal performance.

- XANTHAN GUM - Xanthan gum is used in food products as well as cosmetic application and it's a naturally derived polymer that is obtained by way of a fermentation process using a bacteria call Xanthomonas campestris. It's useful in modifying the viscosity of products resulting in a product that is thick and creamy. It can also be used to create styling gels which result in a clear film on par with the typical synthetic polymers noted above. I absolutely love xanthan gum in my hair gels but one thing I'll note is that not all xanthan gums perform the same. I've used xanthan gums with softer holds and others that form more rigid polymer structures. So you'll need to try the formula to ensure it will work for your hair.

- DEHYDROXANTHAN GUM - This is a naturally-derived, modified form of xanthan gum that provides great hold, humidity resistance and **minimal flaking**.[11]

26.     Even assuming, *arguendo*, that reasonable consumers accept that some minimal level of flaking is inevitable with any hair gel, they would not expect a gel making an express "no flake" representation to contain the one polymer that is more than any other notorious for producing

---

[11] http://newcreationsalon.com/weblog/1443635323_Kansas-City-Hair-Salon-Tips.html (emphases added).

flakes.  They would expect the ingredients to be such as to minimize, not maximize, flaking—as do the Products.

28. Defendant's misleading labeling practices were material to and relied upon by Plaintiff and the Class. These practices would also be material to, and relied upon by a reasonable consumer since reasonable consumers naturally attach considerable importance to the quality of the products they believe they are receiving.

28. Plaintiff and the Class did not know, and had no reason to know, that the Products produce flakes.

29. Defendant's labeling is deceptive and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic labeling and packaging practices.

30. The ingredients list cannot cure Defendant's deceptive representation that the Products produce no flakes, since reasonable consumers are not cosmetic chemists or hairstylists with specialized knowledge of  PVP's tendency to cause flaking.

**Plaintiff and the Class Were Injured as a Result of Defendant's Misrepresentations**

31. As shown above, the Products produce flakes, violating its guarantee that they produce "no flake."

32. Plaintiff and Class members were thus injured when they paid the full price of the Products yet received goods inferior to what was represented to them by Defendant.

33. Plaintiff and Class members were thus deprived of the benefit of their bargains and injured in an amount up to the purchase price, to be determined by expert testimony at trial. *See Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'

(Compl. ¶ 9.) Case law makes clear that this is sufficient at the motion-to-dismiss phase for a §

349 claim to survive.").

## Defendant Intended to Mislead Consumers

34.     Defendant intended to mislead consumers by labeling their Products with a "no

flake" claim despite the known presence of an ingredient known to produce flakes.

35.     Upon information and belief, Defendant employs cosmetic scientists who are

familiar with the basic properties of PVP—including its propensity to cause flaking—and know

that other ingredients are more capable of delivering on Defendant's unambiguous "no flake"

promise.

## Federal Law Prohibits Misbranded Cosmetics Such as Defendant's Products

36.     All Federal law, agency regulation, and state law identically prohibit Defendant's

misleading labeling practices.

37.     Defendant's Products are cosmetics as defined by the FDCA, codified at 21 U.S.C

§ 321:

> The term "cosmetic" means (1) articles intended to be rubbed,
> poured, sprinkled, or sprayed on, introduced into, or otherwise
> applied to the human body or any part thereof for cleansing,
> beautifying, promoting attractiveness, or altering the
> appearance . . . .

38.     Under the FDCA, 21 U.S.C. § 362(a), a cosmetic shall be deemed to be misbranded

"[i]f its labeling is false or misleading in any particular."

39.     Courts have noted the incorporation of FDA regulations into New York law in

evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co*., No. CV-09-

0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's

Agriculture and Marketing law similarly provides in relevant part that food shall be deemed

14

misbranded '[i]f its labeling is false or misleading in any particular, and incorporates the FDCA's labeling provisions."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) New York law expressly incorporates the standard imposed by the FDCA."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc*., 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (evaluating claims under New York Gen. Bus. Law §§ 349 and 350.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons or entities who purchased the Products in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class")

41.     In the alternative, Plaintiff VENUS seeks to represent a class consisting of:

> All persons or entities who purchased the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class")

42.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

43.     The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other Class members may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or

by advertisement, using the form of notice similar to that customarily used in class actions such as this.

44.    Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and other Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal and state laws. Defendant's unlawful, unfair, and fraudulent business practices create the same consumer confusion and deception, and thus the same injury, irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories. Plaintiff will fairly and adequately protect the interests of Class members in that Plaintiff has no interests antagonistic to theirs. Plaintiff has retained experienced and competent counsel.

45.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for them to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would unfairly receive millions of dollars or more in improper charges.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

 i. Whether Defendant labeled and advertised the Products to Plaintiff and Class members using false, misleading and/or deceptive packaging and labeling;

 ii. Whether Defendant's actions constitute violations of the consumer protection laws of New York, the other states, and the District of Columbia;

 iii. Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of the Products;

 iv. Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

 v. Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

 vi. Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

 vii. The appropriate measure of damages and/or other relief; and

 viii. Whether Defendant should be enjoined from continuing their unlawful practices.

47.     The Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

49.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

50.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

51.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

52.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

53.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

54.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

55.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

56.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

57.    The practices employed by Defendant, whereby it advertises, promotes, and markets its Products as not producing flakes is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

58.    Defendant's business practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

59.    Defendant's Practices described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

a.    Defendant misrepresents or misleadingly advertises that the Products do not produce flakes with an intent to cause Plaintiff and Class members to believe that they are superior to their to competitors;

b.    Defendant caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

c.    Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

60.    The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as "no flake" are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

61.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

62.     Defendant's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Products as a result of Defendant's generalized course of deception.

63.     The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

64.     Defendant should be enjoined from representing the Products produce "no flake" on the labels pursuant to NY GBL § 349.  Plaintiff, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## <u>COUNT II</u>

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

65.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

66.    Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

67.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

68.    Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

69.    Defendant's "no flake" misrepresentations are substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

70.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its "no flake" misrepresentations were material to and likely to deceive a reasonable consumer.

71.    Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

72.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT III

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class or, in the alternative, on behalf of the New York Class)**

73.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

74.     Defendant intentionally made materially false and misleading claims through its representations that the Products produce "no flake", intending that Plaintiff and the Class rely on them.

75.     Plaintiff and Class members reasonably relied on Defendant's false and misleading representations and omissions. They did not know, and had no reason to know, the truth about the Products at the time they purchased them. They would not have purchased the Products had they known the truth.

76.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct and must be compensated in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff VANESSA VENUS on behalf of herself and all others similarly situated, seeks judgment against Defendant as follows:

a.      An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.      An Order appointing the undersigned attorney as Class Counsel in this action;

c.      Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.      All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.      Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.      An order for injunctive relief (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Products;

g.      Statutory pre-judgment and post-judgment interest on any amounts;

h.      Payment of reasonable attorneys' fees and costs; and

i.      such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


DATED: September 23, 2019




**LEE LITIGATION GROUP, PLLC**

By: _____ /s/ *C.K. Lee* _____
          C.K. Lee, Esq.

C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Telephone: (212) 465-1188
Facsimile: (212) 465-1181
*Attorney for Plaintiff and the Class*